UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILON JARR BROWN,

                Petitioner,               Case No. 2:20-cv-11716
                                                          Hon. Nancy G. Edmunds

v.

ROBERT VASHAW,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Milton Jarr Brown ("Petitioner") filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who was a juvenile at the time of the offense, is serving a prison sentence of 30-to-60 years as well as lesser terms for his Saginaw Circuit Court jury trial conviction of first-degree murder, MICH. COMP. LAWS § 750.316(1)(b), armed robbery, MICH. COMP. LAWS § 750.529, assault with intent to commit armed robbery, MICH. COMP. LAWS § 750.89, and three counts of felony-firearm. MICH. COMP. LAWS § 750.227b.

The petition raises four claims: (1) Petitioner's right to present a defense was violated when a defense witness was permitted to invoke her Fifth Amendment right against self-incrimination; (2) witnesses were erroneously allowed to identify Petitioner as the person depicted in security camera videos; (3) Petitioner's confrontation rights were violated by the erroneous admission of hearsay statements as excited utterances; and (4) Petitioner's trial was rendered fundamentally unfair by the admission of gruesome autopsy photos. (ECF No. 1, PageID.40-44.)

The Court will deny the petition because the claims are without merit. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

### I. Background

The Michigan Court of Appeals summarized the facts surrounding Petitioner's case:

> Defendant's convictions arise from the June 26, 2016, shooting death of Cameron Pennywell during the course of a robbery in Saginaw. The prosecution's main witness was Daveon Thompson, who testified that he was visiting the Bridgton Townhomes in his mother's truck, along with the victim and Amaris Kinnard, when they encountered defendant. Kinnard passed defendant a book bag or backpack through an open window. According to Thompson, several minutes later, at an abandoned house near the Bridgton Townhomes, defendant produced a gun and accosted Thompson and the victim. Thompson said that defendant attempted to rob him but found nothing to take, did take some cash and a cell phone from the victim, and then shot the victim several times; resulting in the latter's death shortly thereafter. Surveillance video footage from the Bridgton Townhomes substantially comported with this account. A paramedic attending to the victim shortly after the shooting testified that the victim repeatedly volunteered the apparent name "Cornel," including as his only reply to several questions put to him by the paramedic.

*People v. Brown*, 2019 WL 2146238, at *1 (Mich. Ct. App. May 16, 2019).

Further facts surrounding Petitioner's trial will be discussed below. Following trial, Petitioner pursued a direct appeal. The appellate brief filed by Petitioner's counsel raised three claims:

> I. The Confrontation Clause of the Sixth Amendment guarantees criminal defendants a meaningful opportunity to present a complete defense. Milon Brown was denied a meaningful opportunity to present a complete defense when a witness for the defense invoked a specious Fifth Amendment claim against self-incrimination.
>
> II. A witness cannot provide his or her opinion on a matter when the jury is equally capable of reaching its own conclusion on that same issue because this invades the province of the jury. The province of the jury was invaded when lay witnesses provided their opinion that Milon Brown was the person depicted in videos.
>
> III. The excited utterance exception states that hearsay is admissible if it is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Inadmissible

hearsay was admitted into the case against Milon Brown under the guise of an excited utterance when there was time to contrive and misrepresent and this inadmissible evidence was a key component in convicting Brown.

Petitioner then filed a supplemental pro se appellate brief that raised three additional claims:

IV. Defendant Brown was deprived of a fair trial [when] the trial judge repeatedly and improperly interjected impartial [sic] comments and question[s]. And where Judge Janet M. Boes drastically altered trial procedure.

V. Defendant Brown was deprived of a fair trial [from the] trial court decision to allow the introduction of gruesome crime scene photos and photos of the autopsy [which] were highly inflammatory and highly prejudicial in violation of the Sixth and Fourteenth Amendment to the United States Constitution and Article I section 10 and 16 of the Michigan Constitution.

VI. The defendant was deprived of a fair trial where the prosecutor objected to the admission of a dying declaration of Cameron Pennywell when he made multiple comments on who killed him.

The Michigan Court of Appeals affirmed in an unpublished opinion, but it vacated Petitioner's second-degree murder conviction and one of his felony-firearm convictions on double-jeopardy grounds. *Brown*, 2019 WL 2146238, at *1. Brown subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application by standard form order. *People v. Brown*, 934 N.W.2d 246 (Mich. 2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

3

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

### III. Discussion

A. Right to Present a Defense

Petitioner's first claim asserts that his Sixth Amendment right to present a defense was violated when the trial court excused defense witness Amaris Kinnard from testifying after she invoked her Fifth Amendment right against self-incrimination. The prosecutor suggested that Kinnard may have been involved in the crime, and that the murder weapon may have been inside the bookbag she gave to Petitioner a few minutes before the crime. Petitioner asserts that he was deprived of the opportunity to present a counter narrative when he was prevented from presenting Kinnard's testimony that there was no firearm in the bag she gave Petitioner.

After reciting the constitutional standard and the facts surrounding the claim, the Michigan Court of Appeals denied relief as follows:

> Defendant argues that the trial court should have undertaken further inquiry to establish that Kinnard's invocation of the Fifth Amendment was justified. Defendant contends that Kinnard's testimony could have been limited such that she would not have incriminated herself. He also argues that Kinnard should have been given "use immunity" to testify so that her testimony could not have been used against her at her trial. We decline to address the questions posed by defendant, however, because we conclude that Kinnard would not have provided him with a substantial defense.

4

> To obtain appellate relief, defendant must show that he was denied the right to present a substantial defense. See *People v. Petri*, 279 Mich. App. 407, 420; 760 N.W.2d 882 (2008); see also *People v. Whitfield*, 425 Mich. 116, 124 n 1; 388 N.W.2d 206 (1986) (applying harmless-error review to defendant's claim that he was denied the right to present a defense). "A substantial defense is one that could have affected the outcome of the trial." *People v. Putnam*, 309 Mich. App. 240, 248; 870 N.W.2d 593 (2015).
>
> Defendant argues that Kinnard's testimony would have been critical to the defense because it would have contradicted the prosecution's theory that the murder weapon was in the backpack that Kinnard gave defendant shortly before the shooting. We conclude that testimony from Kinnard countering any implication that she provided the murder weapon to defendant would have had little bearing on the outcome of the case. Thompson testified that defendant produced a gun from his waistband, and where the gun came from was not a significant factor in the case. Indeed, in argument the prosecutor emphasized to the jury that it was irrelevant whether Kinnard gave defendant the weapon. Accordingly, the jury's determination whether defendant was the shooter did not depend on whether the jury believed that Kinnard handed defendant a backpack with a gun concealed inside. Defendant fails to establish that he was denied his right to present a substantial defense as a consequence of Kinnard invoking her right against self-incrimination.

*Brown*, 2019 WL 2146238, at *1-2 (footnote omitted).

The state appellate court found, in essence, that any error in failing to compel Kinnard to testify was harmless. A violation of the right to present a defense is amenable to harmless error review. *See Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009); *Couturier v. Vasbinder*, 385 F. App'x 509, 517 n.2 (6th Cir. 2010) (applying harmless error analysis to a claim that exclusion of evidence violated defendant's right to present a complete defense). On federal habeas review, harmless error review requires the court to ask whether the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

There is debate whether apart from satisfying the *Brecht* standard, a habeas petitioner must also show that the state court unreasonably determined that the alleged error was harmless. Indeed, rather than assert that Petitioner fails to satisfy the *Brecht* standard, Respondent asserts that the

5

state court reasonably determined that the alleged error was harmless under § 2254(d). The Sixth Circuit, however, recently confirmed that habeas courts need only apply the *Brecht* standard because it "'subsumes'" § 2254(d)'s unreasonableness inquiry. *Davenport v. MacLaren*, 964 F.3d 448, 454-455 (6th Cir. 2020) (citing *Davis v. Ayala*, 576 U.S. 257 (2015) and *Fry v. Pliler*, 551 U.S. 112, 119-20 (2007)). This is in keeping with the Sixth Circuit's previous statement that "*Brecht* is always the test, and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman* under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009); *see also Reiner v. Woods*, 955 F.3d 549, 556 (6th Cir. 2020) ("The Supreme Court and this court have made clear that '*Brecht* is always the test' for evaluating harmless error on collateral review, even where AEDPA applies.")

The sole question here, then, is whether the purported error of failing to compel Kinnard to testify for the defense "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. In applying this standard, the fact that the evidence was otherwise sufficient to sustain the convictions is not enough to justify a finding of harmlessness. Rather, the question is "whether the evidence is so strong that a reviewing court can be assured that the [alleged trial error] did not affect the jury's conclusions." *Ruimveld v. Birkett*, 404 F.3d 1006, 1017 n.5. (6th Cir. 2005).

Here, though trial counsel failed to make an offer of proof as to Kinnard's proposed testimony, Petitioner asserts that she would have testified that there was not a gun in the backpack she handed to Petitioner minutes before the robbery, and that she was not part of any plan to set-up Pennywell and Thompson to be robbed. It is true that the prosecutor suggested to the jury that Kinnard was involved in the robbery. In closing argument she stated, "So once the white

Expedition arrives in the complex, the defendant obtains the backpack. And what's in the backpack? The gun that was used." (Tr. V, at 41.) That argument was not based on sheer speculation; it was founded on in inference from the testimony of Demetrice Daniel, who said that when Petitioner walked past her apartment with the backpack just before the shooting he told her, "Grams, you don't want what's in this bag." (Tr. III, at 121-122.)

That said, whether Kinnard supplied Petitioner with the weapon was not a material part of the prosecutor's theory of guilt. It would be one thing if the identity of the shooter somehow hinged on possession of the backpack, but Petitioner's identity as the shooter was shown in a much more direct way. First and foremost, his identity was established through the surviving victim/eyewitness Thompson, who had been friends with Petitioner for years. (Tr. III, at 30-31.) Immediately after the shooting, Thompson ran to Hooper's nearby apartment, and he told Hooper that Petitioner shot Pennywell. (Tr. III, at 136-139.)

Mathew Mahoney, a security guard at the adjacent apartment complex, analyzed footage from the complex's security cameras. (Tr. II, at 101-102.) He identified Petitioner, Donquavius White, and Kinnard (persons known to him because of prior contacts over the years) as the three individuals heading towards the scene just prior to the shooting. (Tr. II, at 110-115.) Detective Patrick Busch, who was also familiar with Petitioner from prior contacts, also recognized Petitioner on the same footage. (Tr. IV, at 40-42.)

Then there was the identification testimony of Alizae Vanburen-Buford, who was another resident of the apartment complex who knew Petitioner for a period of years. She was standing on the sidewalk outsider her apartment when the shooting occurred. (Tr. III, at 156.) She identified Petitioner and White as two individuals she saw heading towards the scene just prior to the shooting. (Tr. III, at 156-164, 167, 170.) She then saw Petitioner arguing with someone in a white

7

vehicle, Petitioner pulled out a gun, Petitioner shot the victim, the victim ran and fell, and then Petitioner continued to shoot him. (Id., at 168-170.)

The suggestion that the gun may have originally been supplied by Kinnard, therefore, was an insignificant part of the prosecutor's argument as to why the jury should find that Petitioner was the shooter. In rebuttal argument, she conceded that how Petitioner obtained the gun was unimportant:

> [Defense counsel] says that the government wants to say that the gun was in the backpack. Well, if the gun wasn't in the backpack, ladies and gentlemen, then the defendant had it on him or he got it from Donquavius White. But we know that he had it on him at the time of the robberies and the shooting.

(Tr. V, at 88.)

On this record, the Court finds that the strength of the evidence presented establishing Petitioner's identity as the shooter, which was not based in any material way on evidence that Kinnard passed him the backpack, assures the Court that any error in failing to compel Kinnard to testify did not affect the outcome of the trial. Petitioner has therefore failed to show that the alleged error had a substantial impact or influence on the result of his trial, precluding habeas relief under *Brecht*.

B. Admission of Lay Opinion Testimony

Petitioner's second claim asserts that the trial court erred in allowing Thompson, Mahoney, and Busch to testify that Petitioner was one of the people depicted on the videos seen headed to the scene of the shooting. After discussing the standard for the admission of opinion testimony under Michigan Rule of Evidence 701, the Michigan Court of Appeals found that the testimony was properly admitted:

8

> In this case, the trial court held an evidentiary hearing to decide whether to allow the challenged witnesses to offer opinions regarding the identities of the persons depicted on the surveillance video footage. At the hearing, Thompson testified that he had known defendant as a friend for a "[c]ouple years," during which time he saw him "[a]most every day." The security guard testified that he was familiar with defendant as part of the complex's "no-trespassing list," having removed defendant from the premises multiple times. The security guard explained that he was able to identify defendant because he recognized defendant's facial features, physical build, and tendency to walk in "fairly large strides for his size." The police detective was also familiar with defendant, having worked "road patrol" several years earlier in the area where defendant lived. The detective testified that he sometimes saw defendant "a couple times a shift."
>
> The detective testified that in reviewing the subject video footage he had no difficulty recognizing defendant on the basis of facial features, stature, and manner of walking. Contrary to defendant's argument, the trial court did not abuse its discretion in deciding that the witnesses were in better position than the jury to identify defendant in the surveillance video footage. Thompson was intimately familiar with defendant, having been friends with him for years. We also note that Thompson was at the scene and appears in the video footage himself. The security guard and the detective were also familiar [with] defendant and his unique gait, which the jury may or may not have had a chance to observe. Further, the court found that the stills taken from the surveillance footage were not clear and that the footage itself was "even less clear." Under those circumstances, the witnesses' testimony did not invade the province of the jury.

*Brown*, 2019 WL 2146238, at *3 (footnotes omitted).

Petitioner asserts that the court erred in admitting the identification evidence because the three witnesses were in no better position than the jury to determine whether Petitioner was one of the individuals depicted on the videos. Errors in the application of state law, especially rulings regarding the admissibility of evidence, however, cannot be questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). Rather, federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals concluded that as a matter of state evidentiary law the three witnesses' identification testimony was permissible. This Court sitting in

9

federal habeas review may not conclude otherwise. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Petitioner argues that beyond violating state evidentiary rules, the identification testimony "invaded the province of the jury," which the Court understands to be a reference to his Sixth Amendment right to a jury trial. There is generally no prohibition, however, on a witness offering opinion testimony which goes to an ultimate issue in a case. Both the Federal and Michigan Rules of Evidence permit such testimony. See Fed R. Evid. 704(a); Mich. R. Evid. 704. And there is no clearly established federal law as determined by the Supreme Court which suggests that the admission of such evidence violates the Constitution. *See Davis v. Trierweiler*, 2018 U.S. Dist. LEXIS 55604, 2018 WL 1586487, *10 (E.D. Mich. March 31, 2018). Petitioner therefore fails to demonstrate entitlement to habeas relief with respect to his second claim.

C. Admission of Excited Utterance

Petitioner's third claim asserts that his Sixth Amendment right to confront witnesses was violated by the admission of Hooper's testimony that Thompson told him in his apartment that Petitioner was the shooter. The Michigan Court of Appeals found that the testimony was properly admitted as an excited utterance under Michigan Rule of Evidence 803(2). *Brown*, 2019 WL 2146238, at *4.

As with the previous claim, whether the statement was properly admitted as an excited utterance is a question of state law that cannot form a cognizable basis for granting federal habeas relief. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 706 (E.D. Mich. 2004).

Moreover, the admission of Thompson's statement to Hooper did not contravene clearly established Supreme Court law. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer*

10

*v. Texas*, 380 U.S. 400, 403-405 (1965). The Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). In *Davis v. Washington*, 547 U.S, 813 (2006), the Supreme Court decided that the Confrontation Clause applied only to testimonial hearsay and not to non-testimonial hearsay. *Id*. at 823-824; *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *Giles v. California*, 554 U.S. 353, 376 (2008).

Admission of Thompson's statement to Hooper did not violate Petitioner's confrontation rights for two reasons. First, the statement was non-testimonial - it was a statement to a family member who was trying to calm the declarant. Second, because the declarant testified at trial and was subject to unrestricted cross-examination, Petitioner was able to confront the declarant regarding his out-of-court statement. *See United States v. Owens*, 484 U.S. 554, 560 (1988). Petitioner's third claim is therefore without merit.

D. Admission of Gruesome Photos

Petitioner's final claim asserts that his trial was rendered fundamentally unfair by admission of two autopsy photos. The Michigan Court of Appeals found that the photos were properly admitted:

> Defendant characterizes the two autopsy photographs at issue as "gruesome" and "inflammatory," but does not otherwise attempt to explain how they might have distorted the jurors' judgment. Further, the photographs were relevant to the testimony describing the various wounds. In light of this cursory argument, given the deferential principles that govern review of decisions on objections to photographic evidence, even if we accept at face value defendant's characterization of the challenged images as "gruesome," defendant's offering of that, without more, falls short of establishing a basis for concluding that the trial court erred by admitting the evidence. Accordingly, defendant fails to show that the trial court abused its discretion in admitting the photographs.

*Brown*, 2019 WL 2146238, at *4-5.

Fundamental fairness challenges based on the admission of graphic photographs at trial cannot be supported by clearly established Supreme Court law. *See e.g. Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012) (state court's determination that petitioner's right to fair trial was not denied by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder, was not contrary to clearly established federal law). In particular, the introduction of gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso; the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative.").

The autopsy photographs here were admitted to aid in the understanding of the medical examiner's testimony regarding the nature of victim's gunshot wounds. The testimony and photos were highly relevant to the issue of cause of death and intent. Because the photographs served a proper evidentiary purpose, the trial court's decision to admit them did not render Petitioner's trial fundamentally unfair.

As none of Petitioner's habeas claims merit relief, the petition will be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit. Therefore, a certificate of appealability is denied.

Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Nancy G. Edmunds
Hon. Nancy G. Edmunds
United States District Judge

Dated: April 26, 2021